Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

## OPINION

No. 04-08-00525-CV

Ross A. **RODRIGUEZ**, Attorney at Law, Surety,
Appellant

v.

**STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2003-SF-00026
Honorable David Peeples, Judge Presiding[1]

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Catherine Stone, Chief Justice
    Phylis J. Speedlin, Justice
    Steven C. Hilbig, Justice

Delivered and Filed:    March 11, 2009

AFFIRMED

This is an appeal from a bail bond forfeiture. Appellant Ross A. Rodriguez, attorney for Joe

Zaragoza Garza, executed a $100,000 bail bond for his client. When Garza failed to appear, the

State sought and obtained a bond forfeiture. Rodriguez, as surety, appeals. We affirm the trial

court's judgment.

---

[1] Sitting by assignment.

## BACKGROUND

Garza and Hector Rodriguez Del Rio were arrested. Garza was charged with "Possession of Controlled Substance PG1 over 400 Grams." Del Rio was charged with "Possession of CS w/int Del PG1 over 400 grams." The night magistrate set bond in the amount of one million dollars for each man. Roland Esparza, one of the attorneys for Garza and the original attorney for Del Rio[2], sought a bond reduction for each man. The trial court granted the bond reduction and ordered the magistrate to reduce the bonds to one hundred thousand dollars.

Rodriguez, co-counsel for Garza[3], signed as surety on a $100,000 bail bond for Garza. That same day, Taffi Roberts doing business as Advantage Bail Bonds executed a $100,000 surety bond for Del Rio. Garza and Del Rio were released. However, at a subsequent hearing, another judge increased the bonds to the original amount of one million dollars. Warrants were issued for both men.

Roberts and Rodriguez separately filed affidavits of surety to surrender pursuant to article 17.19 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 17.19 (Vernon Supp. 2008). The trial court ordered a capias to issue for Del Rio based on Roberts's affidavit, but failed to immediately issue a capias for Garza based on Rodriguez's affidavit. The court stated, "I'm going to do a little research on it because there appears to be a lot of confusion about whether or not a Night Mag[istrate] case can be forfeited. Because [the bonds] were increased, if I forfeit it, is it a hundred thousand or a million?" Seven days later a Bexar County Deputy District Clerk notified Rodriguez that his original affidavit could not be located and it would be necessary

---

[2] Attorney Edward Cano ultimately became the attorney for Del Rio.

[3] Rodriguez shares an office with Esparza and Cano.

for him to file a new one. Rodriguez filed a new affidavit and presented it to a visiting judge, who was sitting by assignment in the 379th District Court. The visiting judge signed the affidavit and ordered a capias issued, one week after Rodriguez originally presented the affidavit.

Garza and Del Rio were later indicted for possession of cocaine in an amount over 400 grams and possession with intent to distribute cocaine in an amount over 400 grams. Both charges appear to be based on the same incident that led to the initial arrest. When the cases were called for trial, neither Garza nor Del Rio appeared and their surety bonds were declared forfeited. The trial court signed a judgment nisi against Garza and his surety, Rodriguez, and one against Del Rio and his surety, Taffi Roberts doing business as Advantage Bail Bonds. The State subsequently moved to dismiss the bond forfeiture suit against Del Rio and Roberts. The trial court granted the State's motion to dismiss and ordered the judgment nisi against Del Rio and Roberts withdrawn and dismissed.

The State proceeded with its bond forfeiture suit against Garza and Rodriguez. After a hearing, at which the court accepted stipulated evidence, live testimony, and took judicial notice of the court's file in both the Garza and Del Rio cases, the court entered a final judgment against Garza and Rodriguez, jointly and severally, for the full amount of the one hundred thousand dollar bond. Rodriguez requested findings of fact and conclusions of law, which the trial court entered.

## ANALYSIS

On appeal, Rodriguez raises four points of error. In the first three he contends the trial court erred in granting a final judgment against him because (1) he had an affirmative defense to liability on the surety bond pursuant to section 17.19 of the Code of Criminal Procedure, (2) the State improperly modified the terms of his surety bond by adding more serious charges without his

consent, and (3) there is a fatal and material variance between the bond, the indictment, and the judgment nisi. In his fourth point, he argues that dismissing the bond forfeiture against Del Rio and his surety while proceeding with his violated his rights to due process and equal protection as well as the basic concepts of equity and fairness.

### *Affirmative Defense – Article 17.19 of the Code of Criminal Procedure*

Article 17.19 provides, in relevant part:

(a) Any surety, desiring to surrender his principal and after notifying the principal's attorney, if the principal is represented by an attorney, in a manner provided by Rule 21a, Texas Rules of Civil Procedure, of the surety's intention to surrender the principal, may file an affidavit of such intention before the court or magistrate before which the prosecution is pending. . . .

(b) In prosecution pending before a court, if the court finds that there is cause for the surety to surrender the surety's principal, the court shall issue a capias for the principal. . . . It is an affirmative defense to any liability on the bond that:

(1) the court . . . refused to issue the capias . . .; and

(2) after the refusal to issue the capias . . . the principal failed to appear.

TEX. CODE CRIM. PROC. ANN. art. 17.19(a), (b) (Vernon Supp. 2008). Accordingly, to invoke the affirmative defense to liability, Rodriguez must show the trial court refused to issue a capias in response to his affidavit, and thereafter Garza failed to appear. Because Garza failed to appear, Rodriguez's argument centers on whether the trial court refused to issue the capias.

Rodriguez argues there was a refusal because the trial court did not immediately sign an order issuing a capias – particularly given that it had already signed an order issuing a capias for Del Rio based on an affidavit filed by surety Roberts for Advantage Bail Bonds. In support of his position, Rodriguez cites cases holding a trial court has no authority to refuse to issue a capias for a principal after a surety has properly presented an affidavit pursuant to article 17.19. *See, e.g., McConathy v.*

*State*, 545 S.W.2d 166, 168 (Tex. Crim. App. 1977); *Maya v. State*, 126 S.W.3d 581, 583 (Tex. App.–Texarkana 2004, no pet.); *Garza v. State*, 919 S.W.2d 788, 789 (Tex. App.–Houston [14th Dist.] 1996, no writ). However, none of the cases cited by Rodriguez hold that a failure to sign an order issuing a capias immediately upon presentment constitutes a refusal or that a trial court may not take time to consider the matter prior to ruling. *See id.* In *McConathy*, it was clear the trial judge had refused to order a capias because he marked "refused" on the affidavit of surrender. 545 S.W.2d at 168. In *Maya*, the court of appeals held the surety was not entitled to the affirmative defense of article 17.19. 126 S.W.3d at 583. The court held there was no refusal because the affidavit was never brought to the trial judge's attention – the surety's agent admittedly never spoke to or approached the court about the affidavit to surrender. *Id.* Rather than supporting Rodriguez's argument that a delay constitutes refusal, the authorities he cites seem to require an actual refusal to act, rather than mere inaction or delay. *See McConathy*, 545 S.W.2d at 168; *Maya*, 126 S.W.3d at 583.

Rodriguez suggests the issuance of a capias is a ministerial duty triggered upon presentation of an article 17.19 affidavit and any delay in issuance after presentment constitutes a refusal. We disagree. As noted in the trial court's conclusions of law, nothing in article 17.19 mandates the trial court immediately sign an order issuing a capias. Rodriguez would have this court write an immediacy requirement into the statute that does not currently exist. We decline to do so.

We hold there was no refusal to issue the capias. The record shows the judge initially presented with the affidavit did not refuse to sign it nor refused to issue the capias. Rather, and as stated in the findings of fact, the judge expressly told Rodriguez he was going to do a little research on the matter given that the bond had been increased to one million dollars. A week later, a visiting

judge granted Rodriguez's request and ordered the clerk to issue a capias for Garza. Because there was no refusal to issue a capias for Garza and a capias actually issued based on the affidavit, Rodriguez was not entitled to the affirmative defense set forth in article 17.19. Accordingly, we overrule Rodriguez's first point of error.

### *Variance Between Bond, Indictment, and Judgment Nisi*

Rodriguez claims the trial court erred in granting final judgment because there is a "fatal and material variance" in the bail bond, judgment nisi, and the indictment.

The bond reflects the criminal charge as "possession of controlled substance PG 1 over 400 grams." The indictment contains two counts alleged to have been committed on the same date – possession with intent to deliver over 400 grams of a "controlled substance, namely: cocaine" and possession of over 400 grams a "controlled substance, namely: cocaine." The judgment nisi reflects a felony charge of possession with intent to deliver a controlled substance (penalty group one) over four hundred grams.[4] In its findings of fact and conclusions of law, the trial court found "[t]here is no credible evidence that the initial charge for which the defendants [names omitted] were arrested for and the charge for which they were indicted, was sufficiently different to invalidate the bond." The trial court also concluded that the difference in charges did not "void the bond."

Article 17.09 of the Texas Code of Criminal Procedure states:

Sec. 1. Where a defendant, in the course of a criminal action, gives bail before any court or person authorized by law to take same, for his personal appearance before a court or magistrate, to answer a charge against him, the said bond shall be valid and binding upon the defendant and his sureties, if any, thereon, for the defendant's personal appearance before the court or magistrate designated therein, as well as before any other court to which same may be transferred, and for any and all

---

[4] The judgment actually states "POSS W/I DEL CS PG1 OVER400G." Cocaine is a penalty group one controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102 (3)(D) (Vernon Supp. 2008).

subsequent proceedings had relative to the charge, and each such bond shall be so conditioned except as hereinafter provided.

Sec. 2. When a defendant has once given bail for his appearance in answer to a criminal charge, he shall not be required to give another bond in the course of the same criminal action except as herein provided.

TEX. CODE CRIM. PROC. ANN. art. 17.09 §§ 1, 2 (Vernon Supp. 2008).

In *Shropshire v. State*, the court of criminal appeals considered whether a summary judgment granted in favor of the State was proper where the original bond recited the offense was for theft by false pretext but the defendant was indicted for two offenses – forgery and uttering and passing as true a forged instrument. 433 S.W.2d 898, 899-900 (Tex. Crim. App. 1968). When the defendant failed to appear for trial, the original bond was forfeited. *Id.* at 899. In the bond forfeiture proceedings, the judgment nisi and the final judgment reflected the bond was for the offense of theft by pretext. *Id.* The surety argued he was never liable on the forgery offenses because the offenses were different than the offense for which the bond was written – theft by false pretext. *See id.* at 899-900. The State argued the provisions of article 17.09 applied and the liability of the original bond affixed to the indicted offenses. *Id.* at 900. The court of criminal appeals held it could not determine, from the record before it, if the indicted offenses were "subsequent proceeding[s] relative to the original charge." *Id.* at 900. Accordingly, the court ruled in favor of the surety. *Id.*; *see also Deckard v. State*, 605 S.W.2d 918, 920-21 (Tex. Crim. App. 1980) (reversing summary judgment because record failed to establish the bond offense and the indicted offense were part of the same ongoing criminal action); *but see Trevino v. State*, Nos. 13-04-046-CV/13-04-047-CV, 2005 WL 1643184, at *1-*2 (Tex. App.–Corpus Christi 2005, Jul. 14, 2005, no pet.) (mem. op.) (affirming bond forfeiture where bond offense and indicted offense differed because record established indicted offense arose from same criminal episode as offense for which bond was written).

In this case, the record establishes that the possession with intent to deliver charge arose from the original charge for which the surety undertook his obligation. Accordingly, article 17.09, as interpreted by the court of criminal appeals in *Shropshire* and *Deckard*, controls this issue, and Rodriguez's point of error is overruled.

### *Modification of Surety Bond Terms*

Rodriguez claims that by indicting Garza for possession of a controlled substance and possession with intent to deliver, the State increased the risk he undertook as surety without his consent. Rodriguez argues that because the original bond was for possession only, the State, by increasing the charges, unilaterally and without his consent increased his risk, and therefore cannot recover on the bond forfeiture. Rodriguez cites to several federal and out-of-state decisions to support his argument. *See Reese v. U.S.*, 76 U.S. 13 (1869) (holding surety was discharged on federal bail bond when government allowed principal to return to Mexico without surety's agreement); *U.S. v. Galvez-Uriarte*, 709 F.2d 1323 (9th Cir. 1983) (same); *Continental Cas. Co. v. U.S.*, 337 F.2d 602 (1st Cir. 1964) (holding attorney-surety was not discharged on federal bail bond when attorney-surety knew court had given principal permission to leave country before federal bond was executed by "actual writing agent"); *People v. Jones*, 873 P.2d 36 (Colo. App. 1994) (holding sureties were discharged on bond because subsequent filing of habitual criminal charges against principal materially increased risk to sureties); *Am. Bankers Ins. Co. v. Monroe County*, 644 So.2d 560 (Fla. Dist. Ct. App. 1994), *rev. denied*, 654 So.2d 919 (Fla. 1995) (holding surety was discharged on bond because addition of conspiracy charge substantially increased risk to surety); *Midland Ins. Co. v. State*, 354 So.2d 961 (Fla. Dist. Ct. App. 1978) (holding surety was discharged on bond when principal was original charged with second degree murder and then indicted for first degree murder because

difference in punishments was potentially substantial – life sentence versus death penalty); *State v. Ceylan*, 799 A.2d 685 (N.J. Super. Ct. App. Div.), *cert. denied*, 810 A.2d 64 (N.J. 2002) (holding surety was discharged on bond because post-verdict release of principal after conviction materially increased risk to surety). Rodriguez also refers to several sections of the Third Restatement of Law of Suretyship and Guaranty. *See* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY (1996).

Rodriguez does not cite any Texas cases in which the cited provisions of the Restatement have been adopted.[5] Rodriguez also fails to reconcile any of the cited authorities with article 17.09 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 17.09 §§ 1, 2 (Vernon Supp. 2008). Moreover, *Shropshire* and *Deckard* strongly suggest Texas law does not comport with Rodriguez's position. Although *Shropshire* and *Deckard* analyze the issue in light of whether there was a variance between the judgment nisi and the final judgment, the reasoning in those decisions demonstrates Rodriguez's argument must fail in light of article 17.09. As noted above, it is clear from the record that Garza's indictment for possession with intent to distribute cocaine in an amount over four hundred grams was a subsequent proceeding related to the original charge of possession of cocaine over four hundred grams. *See* TEX. CODE CRIM. PROC. ANN. art. 17.09 §§ 1, 2 (Vernon Supp. 2008). Accordingly, the bond for the original charge was valid and binding for the subsequent indictment, and the case law authorities cited by Rodriguez are distinguishable based on the statutory scheme in article 17.09. *Id*.

Even if Texas were to adopt the Third Restatement of Law of Suretyship and Guaranty Rodriguez would not be entitled to relief. In this case, the original charge carried a possible

---

[5] The Restatement has only been cited twice in this state. *See Byrd v. Estate of Nelms*, 154 S.W.3d 149, 164-65 (Tex. App.–Waco 2004, pet. denied); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 919 (Tex. App.–Dallas 1997) (Wright, J., dissenting), *pet. denied*, 977 S.W.2d 562 (Tex. 1998). Neither of these cases addresses whether Texas has adopted the Restatement nor do they involve the provisions relied upon by Rodriguez.

punishment of from **10** to 99 years, or life, in prison and a fine not to exceed $100,000. *See* TEX. HEALTH & SAFETY CODE. ANN. § 481.115(f) (Vernon 2003). The subsequent charge of possession with intent to deliver carried a possible punishment of from **15** to 99 years, or life, in prison and a fine not to exceed $250,000. *See id.* § 481.112(f). While the minimum punishment increased by five years, this change can hardly be considered a "fundamentally different and greater" risk than the risk undertaken by the surety in the original bond. This slight difference in potential punishment also distinguishes the out-of-state cases cited by Rodriguez because in those cases the potential punishments faced by the principals based on the subsequent charges were far greater than the risk faced by Rodriguez in this case.

### *Equal Protection, Due Process, Fairness, and Equity*

In his final point of error, Rodriguez claims the trial court denied him equal protection, due process, equity, and fairness when it dismissed a virtually identical bond forfeiture case against Del Rio and his surety but did not do the same for him. He argues the Bexar County District Attorney's decision to proceed against him as an attorney-surety was unfair given the decision not to proceed against the non-attorney licensed surety in an identical case.[6]

Rodriguez's contention is similar to a claim of selective prosecution in the criminal context. *See U.S. v. Armstrong*, 517 U.S. 456 (1996). A claim of selective prosecution is based on an allegation that a charge has been brought against a defendant not based on the merits, but for some reason forbidden by the Constitution. *Id*. at 463. A claim of this type requires the courts to exercise

---

[6] Rodriguez cites to article 22.13 of the Texas Code of Criminal Procedure for the proposition that no grounds existed for exoneration of the bond executed on behalf of Del Rio. *See* TEX. CODE CRIM. PROC. ANN. art. 22.13 (Vernon Supp. 2008) (stating causes that will exonerate defendant and sureties, if any, from liability on bond forfeiture). We agree. However, we fail to see the relevance of this portion of the argument because there was no exoneration pursuant to article 22.13. *See id.* Rather, the trial court granted the State's motion to dismiss the forfeiture proceeding.

judicial power over a "special province" of the executive branch, that is the power to enforce criminal laws. *Id*. at 464. District attorneys have broad discretion in enforcing criminal laws and it is presumed they have properly discharged their duties. *See id.* Their discretion is, of course, subject to constitutional restraints, the equal protection and due process clauses precluding them from prosecuting based on arbitrary classifications. *See id.* However, before a prosecution may be deemed unconstitutionally selective, the claimant must demonstrate a prosecutorial policy with a discriminatory effect, motivated by a discriminatory purpose. *Id*. at 465.

Rodriguez asserts that as an attorney-surety, he was treated unequally and unfairly compared to a non-attorney surety and there was no basis for the distinction. The only evidence relied upon by Rodriguez is the State's decision to dismiss the forfeiture proceedings against Del Rio and his surety, a non-attorney, while declining to do the same in his case. The State, however, presented evidence establishing a basis for its decision not to proceed against Del Rio and his surety. Dawn McCraw, the section chief for the District Attorney's bond forfeiture division, testified at the hearing that she decided to dismiss the forfeiture against Del Rio and his surety because she had received information that Del Rio's surety was misled about the circumstances surrounding Del Rio's arrest and the one-hundred-thousand-dollar bond. Specifically, Roberts claimed she was not aware the original bond was set at one million dollars, of the large amount of drugs involved, or that the drugs were found in a specially designed hidden compartment. According to McCraw's information, Roberts only learned of this information later when the case was reported in the press. When Roberts learned of this, she immediately began making contact with Judge Richardson regarding her concerns about the bond, claiming Esparza never gave her these details when he asked her if she wanted to execute Del Rio's bond. McCraw also testified she knew that once Roberts learned of this information, she hired a

bounty hunter to locate Del Rio and from this learned his contact information was worthless. Roberts had relayed this information to the court. In contrast, McCraw testified Rodriguez took none of the steps taken by Roberts.

McCraw testified that after looking at all the information she had obtained, she concluded Roberts had been "outright" and "totally" misled and "defrauded." With respect to Rodriguez, McCraw concluded that as one of Garza's attorneys, he would have known the facts of the case – facts not made known to Roberts. Rodriguez knew the bond had been reduced from one million to one hundred thousand because Esparza, his co-counsel, had obtained the reduction. He knew this was a first degree felony involving a large amount of drugs and would have been aware that this was a serious state charge, and that the State does not even normally prosecute a case this large, but refers it to the federal government. McCraw stated Rodriguez, unlike Roberts, never once claimed he was misled about the facts, even in response to a direct inquiry.

In support of his claims Rodriguez cites a case from this court, *Gramercy Ins. Co. v. State*, 834 S.W.2d 379 (Tex. App.–San Antonio 1992, no pet.). In that case, the State obtained a bond forfeiture against a surety, but dismissed the forfeiture suit on a personal recognizance bond that arose out of the same criminal charge. *Id*. at 380. The surety sought a remitittur, which was denied by the trial court. *Id*. On appeal, the issue was whether the surety had to comply with the procedural requirements related to a general bill of review when a bill of review is brought pursuant to article 22.17 of the Texas Code of Criminal Procedure. *Id*. at 381; *see also* TEX. CODE CRIM. PROC. ANN. art. 22.17 (Vernon 1989) (permitting a bond surety to file special bill of review within two years of final judgment to contest bond forfeiture). This court held that a bill of review under article 22.17 did not have to conform to the rules governing general bills of review and in doing so noted it was

"troubled" by the fact that the State had dismissed its forfeiture suit against the defendant based on the personal recognizance bond, but had decided to proceed with the forfeiture suit against the surety based on the surety bond. *Id*. at 382. The only reason given by the State for pursuing one and not the other was that the defendant had been returned to custody and therefore the purpose of the personal recognizance bond had been satisfied. *Id*. This court granted the surety a remitittur. *Id*.

*Gramercy* is distinguishable. In *Gramercy*, the only distinction between the bond dismissed and the one pursued was the nature of the bond – personal recognizance versus commercial suety. Here, as detailed above, the State's decision to pursue forfeiture against Rodriguez and not Roberts was based on the information each surety had about the case and the State's belief that Roberts, unlike Rodriguez, has been misled or defrauded into executing the bond.

Rodriguez presented no evidence that the State made an unconstitutionally selective decision to proceed against Rodriguez, an attorney-surety, while dismissing a forfeiture suit against his non-attorney counterpart. The evidence shows the State made a decision, based on facts within its knowledge, not to proceed with a particular forfeiture case because the surety lacked necessary information when she executed the bond or was misled about the underlying facts. There were no such facts in existence when the State looked at the forfeiture case against Rodriguez. Because the State articulated a rational basis for its decision that does not involve constitutional prohibitions, we cannot say the trial court treated Rodriguez inequitably, unfairly, or denied him equal protection or due process. Accordingly, we overrule his final point of error.

## CONCLUSION

We overrule Rodriguez's points of error and affirm the trial court's forfeiture judgment.


Steven C. Hilbig, Justice