RECEIVED IN
COURT OF CRIMINAL APPEALS

SEPTEMBER 9, 2015

ABEL ACOSTA, CLERK

PD-0019-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/8/2015 3:44:04 PM
Accepted 9/8/2015 4:26:09 PM
ABEL ACOSTA
CLERK

**PD-0019-15, PD-0020-15**
**PD-0021-15, PD-0022-15**

### IN THE TEXAS COURT OF CRIMINAL APPEALS

---

## THE STATE OF TEXAS
*APPELLANT*

vs.

## ALBERT G. HILL, III
*APPELLEE*

---

FROM THE FIFTH COURT OF APPEALS,
CAUSE NOS. 05-13-00421-CR, 05-13-00423-CR,
05-13-00424-CR, 05-13-00425-CR

APPEAL FROM THE 204TH JUDICIAL DISTRICT COURT
OF DALLAS COUNTY, TEXAS, CAUSE NOS. F11-00180,
F11-00182, F11-00183, F11-00191

---

## BRIEF OF AMICUS CURIAE LISA BLUE
## IN SUPPORT OF APPELLANT

---

ROBERT N. UDASHEN, P.C.
State Bar No. 20369600
rnu@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

# Table of Contents

Index of Authorities .......................................................................3

Interest of Amicus Curiae and Disclosure of Source of Fee Paid.............5

Argument........................................................................................7

    I.   It's unclear what standard Hill asks this Court to use to conduct its analysis, but it's clear that *Armstrong* controls..............9

    II.  Under *Armstrong*, it is plain that Hill was not entitled to an evidentiary hearing on his conclusory and baseless claims ............14

    III. Conclusion...................................................................25

Prayer ..........................................................................................26

Certificate of Service.......................................................................28

Certificate of Compliance ................................................................28

# Index of Authorities

**Cases**

*Attorney General v. Irish People, Inc.*, 684 F.2d 928 (D.C. Cir. 1982)....12

*Blue v. Hill*, No. 3:10-CV-2269-L, 2014 WL 2217334, *2 (N.D. Tex. 2014) ................................................................................................20, 21

*Campbell Harrison & Dagley, L.L.P. v. Hill*, 582 Fed. App'x 522 (5th Cir. 2014) ...........................................................................................20

*Franks v. Delaware*, 438 U.S. 154 (1978) .........................................11, 13

*Galvan v. State*, 988 S.W.2d 291, 294 (Tex. App.—Texarkana 1999, pet. ref'd) .........................................................................................23

*Garcia v. State*, 172 S.W.3d 270, 273 (Tex. App.—El Paso 2005, pet. ref'd) .........................................................................................22

*In re United States*, 397 F.3d 274, 284 (5th Cir. 2005) ......................9, 14

*Jones v. White*, 992 F.2d 1548 (11th Cir. 1993)....................................12

*Ramsey v. State*, 579 S.W.2d 920, 923 (Tex. Crim. App. 1979) .............11

*Rodriguez v. State*, 283 S.W.3d 465, 471 (Tex. App.—San Antonio 2009, pet. dism'd)....................................................................................22

*State v. Dinur*, 383 S.W.3d 695, 697 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ..................................................................................22

*State v. Hill*, No. 05-13-00421-CR, 2014 WL 7497992, *11 (Tex. App.— Dallas 2014) ...........................................................................passim

*United States v. Armstrong*, 48 F.3d 1508 (9th Cir. 1995)....................12

*United States v. Armstrong*, 517 U.S. 456 (1996)..........................passim

*United States v. Cruz*, 285 F.3d 692 (8th Cir. 2002) ..............................17

*United States v. Fares*, 978 F.2d 52 (2d Cir. 1992)................................12

*United States v. Goulding*, 26 F.3d 656 (7th Cir. 1994)..........................12

*United States v. Greenwood*, 796 F.2d 49 (4th Cir. 1986).......................12

*United States v. Jennings*, 724 F.2d 436, 445–46 (5th Cir. 1984) ...12, 13, 14

*United States v. Johnson*, 592 F.3d 749, 757 (7th Cir. 2010) ................17

*United States v. Mercado*, 610 F.3d 841, 847-48 (3d Cir. 2010) .............17

*United States v. Murdock*, 548 F.2d 599, 600 (5th Cir. 1977) ................24

*United States v. P.H.E., Inc.*, 965 F.2d 848 (10th Cir. 1992) .................12

*United States v. Peete*, 919 F.2d 1168 (6th Cir. 1990)...........................12

*United States v. Penagaricano-Soler*, 911 F.2d 833, 839 (1st Cir. 1990)12

*United States v. Ramirez*, 765 F.2d 438, 440 (5th Cir. 1985) .................12

*United States v. Sanchez*, 517 F.3d 651, 671 (2d Cir. 2008) ............. 13, 14

*United States v. Saville*, No. CR 12-02-BU-DLC, 2013 WL 3270411, *8
   (D. Mont. 2013) ................................................................................ 17

*United States v. Torquato*, 602 F.2d 564 (3d Cir. 1979) ......................... 12

*United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998) ............ 12, 14

*Wade v. United States*, 504 U.S. 181, 186 (1992) ............................. 12, 14

*Wayte v. United States*, 470 U.S. 598, 524 (1985) ............................ 24, 25

## Statutes

Tex. Penal Code § 32.32(b) ....................................................................... 7

Tex. Penal Code § 32.46(a) ....................................................................... 7

## Interest of Amicus Curiae and Disclosure of Source of Fee Paid

Appellee Albert G. Hill III accused Amicus curiae Lisa Blue to have improperly encouraged Dallas County District Attorney Craig Watkins to indict Hill in these cases. Though these allegations are entirely without any factual support, the trial court in its findings of fact and conclusions of law on Hill's motion to quash and dismiss the indictments— adopted nearly verbatim from those submitted to the trial court by Hill— concluded it could be inferred that Blue did so due to her refusal to testify at the hearing on the matter.

Hill's allegations in this case, and now the findings of fact and conclusions of law signed by the trial court, have caused, and continue to cause, great harm to Blue's personal and professional reputations. During the proceedings in the trial court, rarely a day went by that the media did not cover the case in some manner. Additionally, the findings and conclusions' implication that it is improper for politicians and donors to have a personal relationship effects a chill on Blue's, and every other Texan's, right to participate in the political process. Accordingly, Blue now files this limited amicus curiae brief in support of the State, pursuant to Rule 11 of the Texas Rules of Appellate Procedure, with a deep and

significant interest in this Court's determination of the propriety of the trial court's findings and conclusions. She has retained the above-named attorneys to file this amicus curiae brief on her behalf.

## Argument

Albert Hill III committed the felony crimes of making a false statement to obtain property or credit and securing execution of a document by deception. *See* TEX. PENAL CODE §§ 32.32(b), 32.46(a); (RR4: 149-50) (assistant district attorney characterized the case as "one of the easier cases [she] had"). As a result, the State initiated prosecution.

From the outset, Hill has complained that the State chose to prosecute him for his crimes, seemingly oblivious to his clear violations of the law. *See* (CR-180-I at 35). Ignoring this simple causality—commit felonies, get prosecuted—Hill has declared that the State only cared about his crimes for a nefarious reason: because Blue improperly influenced former District Attorney Craig Watkins to prosecute Hill. (CR-180-I at 35).

At no point has Hill offered any evidence to support his claim; just rank speculation as to the content of communications between longtime friends and political associates, Watkins and Blue. Repeatedly, Hill has conjured a conspiracy from absolutely nothing at all. Accordingly, in an opinion filed December 29, 2014, the court of appeals correctly concluded that Hill hadn't even met the minimal threshold required to obtain a

hearing on his claim. The court thus reversed the trial court's finding that the State's and Blue's invocation of privilege[1] at such a hearing warranted dismissal of the indictments pending against Hill, vacated the court's order dismissing the indictments, and returned the case to that court for trial on the indictments. *State v. Hill*, No. 05-13-00421-CR, 2014 WL 7497992, *11 (Tex. App.—Dallas 2014).

Now, before this Court, Hill again complains that he is being selectively and vindictively prosecuted for his felony crimes.[2] Over the course of some 70-plus pages, he explains for this Court the history of prosecutorial misconduct, and debates the standards for evaluating as much, before finally attempting to clarify just what evidence he has to show he is being prosecuted for any reason other than that he committed serious crimes. Again, though, he can't. Hill points only to content-unknown con-

---

[1] Blue only asserted her Fifth Amendment privilege because she received a federal target letter immediately before the hearing. That criminal investigation was instigated by Hill and was soon dropped.

[2] Hill has apparently abandoned his claim that Watkins was not a disinterested prosecutor, now asserting only that Watkins selectively and vindictively prosecuted him. *Compare* Hill's brief before the court of appeals, pages 36-44, and Hill's Petition for Discretionary Review, which only mentions the disinterested claim in summarizing prior proceedings.

versations as somehow damning evidence of Watkins's and Blue's culpability. They're not, though, and they never were, and it remains that Hill is very much guilty of the crimes for which he was prosecuted. Accordingly, Blue respectfully requests this Court to make clear that there is no evidence she engaged in any wrongdoing and to affirm the court of appeals's holding.

## I. It's unclear what standard Hill asks this Court to use to conduct its analysis, but it's clear that *Armstrong* controls

The court of appeals in this case conducted its analysis pursuant to *United States v. Armstrong*, 517 U.S. 456 (1996); *see Hill*, 2014 WL 7497992 at *5 ("Indeed, the standard for obtaining discovery on claims like selective or vindictive prosecution requires 'some evidence tending to show the existence of the essential elements' of the claimed violations.") (citing *Armstrong*, 517 U.S. at 468). In that case, the Supreme Court held that the standard for obtaining discovery on claims like selective or vindictive prosecution requires "some evidence tending to show the existence of the essential elements" of the claimed violations. *Armstrong*, 517 U.S. at 468; *see also In re United States*, 397 F.3d 274, 284 (5th Cir. 2005) (prima facie case "requires the criminal defendant to bring forward some evidence ").

9

It is not entirely clear whether Hill's argument accepts this standard. Citing *Armstrong*, he acknowledges that "the standard to prove a claim of selective prosecution is a 'demanding' standard, and that there is a 'background presumption' that what a defendant must show in the first instance to obtain discovery (through a hearing) 'should itself be a significant barrier to the litigation of insubstantial claims.'" PDR at 50 (citing *Armstrong*, 517 U.S. at 463). As Hill summarizes: "to obtain a hearing under the 'presumption of prosecutorial vindictiveness' method, a defendant must provide 'some evidence' that shows: (1) the government singled out the defendant for prosecution and has not proceeded against others similarly situated based on the type of conduct for which the defendant is charged; and (2) the government's discriminatory selection is invidious." PDR at 47. Perhaps because this standard is "rigorous," though, *see Armstrong*, 517 U.S. at 468, Hill then "asks this Court to find that so long as a defendant attaches a proffer of evidence to a motion to dismiss due to prosecutorial misconduct that the trial court in its discretion determines to present a colorable claim of a constitutional violation, the defendant has attached 'some evidence,' and a trial court has the discretion to conduct a hearing on the motion to dismiss." PDR at 47-48. And

10

a "'proffer of evidence' in the context of a selective prosecution claim that allows a trial court in its discretion to order a hearing on the claim," Hill asserts, "should be no different than the procedure to obtain a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), where a defendant contests the truthfulness of an affidavit supporting a search warrant." PDR at 55. The court of appeals's holding otherwise, Hill claims—apparently forgetting *Armstrong*—was an "unprecedented rule." PDR at 57. Instead, under *Franks*, Hill asserts, merely "a statement by the defense attorney as to what would be shown if he were allowed to call witnesses on the issue" justifies a hearing." PDR at 56-57 (citing *Ramsey v. State*, 579 S.W.2d 920, 923 (Tex. Crim. App. 1979)). Hill then returns to *Armstrong*, however, in declaring that he provided sufficient evidence to warrant a hearing. PDR at 58-67).

Whatever standard Hill is asking for, this Court should not apply *Franks* in the selective/vindictive prosecution context. First, as best Blue can tell, no court ever has. And, indeed, Hill in his brief cites to no case in which a court has done so.[3] *See* PDR at 55-58, 71-75. This makes sense.

---

[3] Hill concludes his brief by claiming that "most other courts have adopted standards substantially similar" to that which he asks this Court to adopt. (PDR at 71-75). Again, it is unclear exactly what standard that is. But, regardless, every single one of those cases pre-dates *Armstrong*. *See United States v. Penagaricano-Soler*, 911 F.2d

For, as Hill acknowledged, but then seemingly ignored, there already is a standard for determining whether a hearing is justified: *Armstrong*. And under *Armstrong,* "[a] defendant is not automatically entitled to an evidentiary hearing to make the required showing. He must first present facts 'sufficient to create a reasonable doubt about the constitutionality of [his] prosecution' resulting from selective prosecution." *United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998) (citing, e.g., *Armstrong*, 517 U.S. at 469; *United States v. Jennings*, 724 F.2d 436, 445–46 (5th Cir. 1984) (finding bare generic allegations concerning the selective prosecution of racial groups insufficient to justify an evidentiary hearing); *United States v. Ramirez*, 765 F.2d 438, 440 (5th Cir. 1985) (holding "conclusional allegations of impermissible motive are not sufficient" to demonstrate the government acted in bad faith)); *see also Wade v. United States*, 504 U.S. 181, 186 (1992) (stating that "generalized allegations of im-

833, 839 (1st Cir. 1990); *United States v. Fares*, 978 F.2d 52 (2d Cir. 1992); *United States v. Torquato*, 602 F.2d 564 (3d Cir. 1979); *United States v. Greenwood*, 796 F.2d 49 (4th Cir. 1986); *United States v. Peete*, 919 F.2d 1168 (6th Cir. 1990); *United States v. Goulding*, 26 F.3d 656 (7th Cir. 1994); *United States v. Armstrong*, 48 F.3d 1508 (9th Cir. 1995); *United States v. P.H.E., Inc.,* 965 F.2d 848 (10th Cir. 1992); *Jones v. White*, 992 F.2d 1548 (11th Cir. 1993); *Attorney General v. Irish People, Inc.*, 684 F.2d 928 (D.C. Cir. 1982). Moreover, every single one of them, like *Armstrong*, requires a defendant to produce some evidence, not just wildly speculative accusations. *See id.*

12

proper motive" are not enough to entitle a defendant to a remedy, discovery, or evidentiary hearing); *United States v. Sanchez*, 517 F.3d 651, 671 (2d Cir. 2008) ("Generalized allegations of improper motive do not disturb the presumption of regularity."). A defendant's factual allegations must be accompanied by evidence that tends to establish his constitutional claims. *See Jennings*, 724 F.2d at 445–46 (after reviewing affidavit and statement offered in support of motion to quash, court unable to conclude Jennings presented facts sufficient to create reasonable doubt about the selectivity of his prosecution).

Moreover, even if this Court were to consider becoming the first court to apply *Franks* in the selective prosecution context, Hill exaggerates its permissiveness. Even in *Franks*, the United States Supreme Court required that, "[t]o mandate an evidentiary hearing, the challenger's attack *must be more than conclusory and must be supported by more than a mere desire to cross-examine*." *Franks*, 438 U.S. at 171 (emphasis added). Accordingly, Blue first urges this Court to follow the court of appeals and conduct its analysis under *Armstrong*. *See Hill*, 2014 WL 7497992 at *5. A defendant who claims his constitutional rights were violated by some form of prosecutorial misconduct must make out a prima

facie case of his claims before he is entitled to an evidentiary hearing or discovery. *See In re United States*, 397 F.3d at 284 (citing *Armstrong*, 517 U.S. at 465; *Webster*, 162 F.3d at 334). And the "facts" required to cast doubt about the constitutionality of the prosecution and to rebut the presumption the State acted in good faith such that a person is entitled to an evidentiary hearing (or even discovery) must be more than allegations. *See Jennings*, 724 F.2d at 445–46; *Wade*, 504 U.S. at 186, *Sanchez*, 517 F.3d at 671.

## II. Under *Armstrong*, it is plain that Hill was not entitled to an evidentiary hearing on his conclusory and baseless claims

Under the appropriate standard—and really, under almost any standard—it is clear that the court of appeals was correct in holding that Hill was not entitled to a hearing on his motion to dismiss. *See Hill*, 2014 WL 7497992 at *11. Hill argues just the opposite: that he proffered "not only… 'some evidence,'" but "exceptionally clear evidence" that "Blue, who at the time was engaged in a fee dispute with [Hill], corruptly influenced Watkins, a close friend and fellow Democratic party operative, to authorize indictments against [Hill] in exchange for a promise of and actual receipt of 'campaign' contributions for a nonexistent 'campaign.'""

PDR at 12-13. As support, Hill claims to possess "compelling circumstantial evidence." PDR at 13-14. But after 60-plus pages of bluster, there Hill's argument ends—with a mere recitation of the evidence that the court of appeals rejected as simple "speculation," and not a word addressing that conclusion. *See* PDR at 63-67.

Hill's argument that he "made a 'colorable claim' of a constitutional violation" begins in earnest in the final paragraph of page 63 of his brief. All that precedes it comprises Hill's version of the facts and the standard for evaluating whether a defendant is entitled to a hearing. But there, beginning on page 63, Hill claims in two paragraphs that the "Motion to Dismiss and its attachments detail how Blue, who at the time was engaged in a fee dispute with Appellee, corruptly influenced Watkins, a close friend and fellow Democratic party operative, to authorize indictments against Appellee in exchange for a promise of and actual receipt of 'campaign' contributions for a nonexistent 'campaign.'" PDR at 63-64. Hill then sets forth his "exceptionally clear evidence," which the court of appeals aptly summarized, and with which Hill does not quarrel:

> (1) political contributions from a lawyer associated with Hill's father in the months after the February 2010 complaint and five months before the indictments were returned and a donation by Blue less than a month before the indictments were

returned; (2) that Blue hosted a fundraiser for Watkins in the month before the indictments were returned; (3) the "unusual" nature of the charges against him; (4) the lack of notice to him that indictments were being considered; (5) the suspect timing of the indictments in that they were returned just before the fee-dispute trial involving Blue, which Hill claimed prevented him and his wife from testifying in that trial; (6) the "heated exchange" of communications with Watkins and his office in the weeks leading up to the Hills' indictments and ending after the indictments were returned; (7) Blue's discussion about indictments with Watkins in the time before they were returned; (8) Blue's comment made in her deposition that she would have no reason to discuss indictments with Watkins after they were returned; (9) Blue's close relationship with Watkins; (10) defense counsel's meeting with Smith about the charges; and (11) the fact that charges against Hill's wife were dismissed. Hill contends on appeal that these facts cast doubt on the constitutionality of the prosecution and not only entitle him to an evidentiary hearing but also establish a prima facie showing of prosecutorial misconduct.

*Hill*, 2014 WL 7497992 at \*6; *see* PDR at 52 (pointing to the court of appeals's summary of Hill's "evidence").

No real argument follows. *See* PDR at 67. Hill instead returns to advocating for a lesser burden than *Armstrong* (now, for "public policy" reasons—more on this below), without at all explaining how, under any standard, his "evidence" amounts to anything but pure speculation. PDR at 67-68. For good reason: he can't. The court of appeals was absolutely correct in concluding that, "[a]bsent evidence regarding the substances of [Blue and Watkins'] communications, Hill's characterization about the

16

timing of the text messages and phone calls does not necessarily suggest the communications were related to the indictments as opposed to other legitimate purposes." *Hill*, 2014 WL 7497992 at *8. This comports with both common sense and the holdings of several federal courts of appeals. *See, e.g., United States v. Mercado*, 610 F.3d 841, 847-48 (3d Cir. 2010) (jurors may not infer that a defendant gained knowledge of the subject of an illegal conspiracy based on phone calls alone); *United States v. Johnson*, 592 F.3d 749, 757 (7th Cir. 2010) (finding that approximately 300 calls over 10 months, even combined with other circumstances, does not show conspiratorial relationship); *United States v. Cruz*, 285 F.3d 692 (8th Cir. 2002) (evidence was insufficient to support defendants' convictions for conspiracy to distribute methamphetamine; although police officers observed defendants talking on cellular phone shortly after being notified that government informant, a known drug dealer, had initiated phone call to cell phone number, absent evidence of the contents of the phone conversations, jury could only speculate as to relationship between them and what was discussed); *see also United States v. Saville*, No. CR 12-02-BU-DLC, 2013 WL 3270411, *8 (D. Mont. 2013) ("Likewise, while

17

it may have been possible to speculate that Saville was planning on connecting his computer to another on the Gnutella network for the purpose of downloading child pornography, that too would be like speculating about the contents of a phone conversation based on the identity of the person or entity dialed."). Indeed, the evidence in this case was even *less* suspicious in light of Blue and Watkins's long-standing (and well-documented) friendship. As the court of appeals explained:

> Again, Hill emphasized throughout his motion that Blue had a personal and professional relationship with Watkins for many years. It is possible their communications encompassed a multitude of topics. Because of that relationship, contact with Watkins cannot be considered unusual.
>
> Similarly, other than Hill's speculation that the timing of Blue's campaign donations and fundraiser were suspect, Hill did not present any evidence that Blue's status as a political patron related to the indictments. As Hill pointed out in his motion, Blue had been a contributor and supporter of Watkins since 2007, well before her fee dispute with Hill. Hill also emphasized that Watkins announced his re-election campaign in Blue's house in November 2009. But this merely supports the fact that Blue had a long-term relationship with Watkins, not that Blue's political contributions related to the indictments. In fact, Blue's representation of the Hills in the trust litigation did not begin until November 2009. Further, Hill's accusation that Tillotson's campaign contributions in 2010 influenced Watkins's decision to prosecute Hill is not supported by any evidence.

*Id.*

Furthermore, Hill's characterization of the State's case against him is wildly inaccurate. Repeatedly, Hill claims that the "mortgage fraud allegations were dubious at best," and that the indictments against him were thus "unprecedented." PDR at 15, 28, 64, 65. But in support, Hill points only to the allegations in his original motion, and to evidence adduced *at the hearing*. *See* PDR at 15, 28, 64, 65 (citing CR-180: 36-52; RR4: 49, 126, 129, 155). The former is, of course, not evidence, and the latter has no place in this Court's analysis of whether Hill included *with his motion* some evidence tending to show the existence of the essential elements of the claimed violations. *See Armstrong*, 517 U.S. at 468. Moreover, the evidence adduced at the hearing did not support Hill's accusation. Hill claims that Assistant District Attorney Stephanie Martin "didn't see how [she] could prove [Hill's] criminal case" but was directed to proceed anyway. PDR at 22, 37. This is a gross mischaracterization of the testimony adduced at the hearing. In fact, Martin testified only that she did not think the case could be prosecuted with the family trust as the victim, rather than the bank that Hill lied to, and that, accordingly, Moore directed her to continue her investigation as she had been. (RR4: 186-187). Indeed, Martin believed it to be a "good case" from the moment

19

it was reported; it was "one of the easier cases [she] had." (RR4: 149-150). There was no testimony whatsoever that Martin preferred to drop the case but that Moore demanded she press on.

Unsurprisingly, then, the court of appeals's conclusion was also precisely in line with that of United States District Court for the Northern District of Texas. In civil litigation between Hill and Blue over attorneys' fees, Hill attempted to avoid paying Blue for her legal work "by contend[ing] that the evidence of numerous communications between Lisa Blue and District Attorney Craig Watkins and donations from Blue and her associates to Watkins's campaign establishe[d] that [Blue] was actively involved in ensuring that the Hills were wrongfully indicted for mortgage fraud two weeks before the attorneys' fee trial was set to begin, and that the fraudulently obtained criminal charges interfered with their ability to defend themselves against [Blue's] claims in the attorneys' fee dispute." *Blue v. Hill*, No. 3:10-CV-2269-L, 2014 WL 2217334, *2 (N.D. Tex. 2014) appeal dismissed sub nom. *Campbell Harrison & Dagley, L.L.P. v. Hill*, 582 Fed. App'x 522 (5th Cir. 2014). In so doing, Hill pointed to largely the same "evidence" he relies on in this Court. *Id.* at *4. And in that court, too, Hill's claim was rejected for relying "upon supposition and

20

speculation in place of evidentiary support." *Id*. The federal court explained:

> The extensive appendices and briefing submitted by the Hills do not, as they contend, "allow[ ] only one reasonable inference ... that Ms. Blue improperly influenced the D.A.'s Office to indict her former clients in order to give [Blue] an unfair advantage in the fee trial." These records instead document that Blue and Watkins have a close personal and professional relationship and, separately, that the Hills's indictments were unusual and eventually dismissed by the District Attorney's Office. There is not sufficient evidence to prove, or reasonably infer, that the interactions or relationship between Blue and Watkins resulted in the criminal charges against the Hills, that the indictment of the Hills was meant to reward Blue, or place the Hills at a disadvantage in the attorneys' fee dispute. The Hills speculate—but in no way establish—that the phone calls, meetings, and campaign donations from Blue to Watkins were related to the criminal charges against them, as opposed to legitimate purposes. The Hills's evidence of temporal proximity and fervent belief in the correctness of their argument are not enough to satisfy their Rule 60(b)(3) burden. The Hills do not submit evidence, direct or circumstantial, to establish that Blue… influenced the District Attorney's Office to indict them wrongfully….

*Id*. In fact the federal court rejected Hill's claim even while mistaking a crucial fact: both Hills's indictments were not dismissed, only Hill's wife's. *See Hill*, 2014 WL 7497992 at *1 ("The State later dismissed the charges against Hill's wife and continued to prosecute the cases against Hill.").

21

Hill has nothing to rebut the conclusions of these courts. No argument. Faced with this inconvenient reality, Hill, in a sort of last-ditch effort, notes that "[n]o appellate court in Texas has ever ruled that a trial court erred in conducting a hearing on a defendant's motion to dismiss charges on the basis they violated his constitutional rights." (PDR at 67-68). But none of the cases to which he cites even address that issue. *See Garcia v. State*, 172 S.W.3d 270, 273 (Tex. App.—El Paso 2005, pet. ref'd) ("In Issue No. Two, Appellant maintains that the court erred in failing to grant her motion to quash the indictment on the basis of selective prosecution."); *State v. Dinur*, 383 S.W.3d 695, 697 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The State of Texas appeals from the trial court's dismissal of driving-while-intoxicated charges against appellee Alexander Elliot Dinur. Because we conclude that there is neither a violation of appellee's constitutional rights nor any statutory or common law basis for dismissal asserted, we reverse the trial court's order of dismissal and remand for further proceedings."); *Rodriguez v. State*, 283 S.W.3d 465, 471 (Tex. App.—San Antonio 2009, pet. dism'd) ("In his final point of error, Rodriguez claims the trial court denied him equal protection, due process, equity, and fairness when it dismissed a virtually identical bond

forfeiture case against Del Rio and his surety but did not do the same for him. He argues the Bexar County District Attorney's decision to proceed against him as an attorney-surety was unfair given the decision not to proceed against the non-attorney licensed surety in an identical case."); *Galvan v. State*, 988 S.W.2d 291, 294 (Tex. App.—Texarkana 1999, pet. ref'd) ("Galvan first contends that the trial court erred in failing to allow evidence of selective prosecution as a defense because selective prosecution is an issue which the jury should be allowed to consider…. In his second point of error, Galvan contends that the trial court erred in holding that he failed to successfully show a prima facie case of selective prosecution in his motion to quash the indictment…. Galvan contends in his third point of error that the trial court erred by not holding a hearing on his *motion for new trial*."). And, indeed, other than noting that no court has ever ruled as the court of appeals did here, Hill does not urge this Court to fall in line. *See* PDR at 68-69.

Hill finally asserts that "public policy" benefits if this Court will just "allow[ ]" judges "the discretion to conduct a hearing" when a defendant merely "makes a colorable *claim* of prosecutorial misconduct." PDR at 70 (emphasis added). Pointing to Justice Marshall's dissenting opinion in

23

*Wayte v. United States*, 470 U.S. 598, 524 (1985), Hill argues that doing so is necessary because "evidence of selective prosecution is nearly impossible for a defendant to obtain through Article 39.14 or *Brady* because the evidence more than likely is in the hands of the prosecutor who is committing the misfeasance." PDR at 69.

Even forgetting that Justice Marshall's dissenting opinion has no precedential value, and that it, too, pre-dates *Armstrong*, in fact Justice Marshall's opinion supports the opposite conclusion than that for which it is cited. Hill points to Marshall's opinion because it observes that "[t]he need to develop all relevant facts in the adversary system is both fundamental and comprehensive," and "that most of the relevant proof in selective prosecution cases will normally be in the Government's hands." PDR at 69-70 (citing *Wayte*, 470 U.S. at 624 (Marshall, J., dissenting)). But Hill ignores Justice Marshall's subsequent admonition that, "[a]t the same time," the government need be protected "from attempts by the defense to seek discovery as a means of harassment or of delay." *Wayte*, 470 U.S. at 524 (Marshall, J., dissenting) (citing *United States v. Murdock*, 548 F.2d 599, 600 (5th Cir. 1977)). And, to that end, all of these statements are in support of what would ultimately become *Armstrong*:

24

The Courts of Appeals have adopted a standard under which a defendant establishes his right to discovery if he can show that he has a "colorable basis" for a selective prosecution claim. To make this showing, a defendant must allege sufficient facts in support of his selective prosecution claim "to take the question past the frivolous state." In general, a defendant must present "*some evidence* tending to show the existence of the essential elements of the defense."

*Wayte*, 470 U.S. at 623-24 (Marshall, J., dissenting) (emphasis added). In no way, then, does Justice Marshall's dissenting opinion in *Wayte* support Hill's argument that this Court should approve the trial court's conclusion that he was entitled to an evidentiary hearing—if anything, it supports the *Armstrong* standard that Hill cannot satisfy.

## III. Conclusion

The court of appeals concluded that, "other than Hill's belief that the DA's office served as a 'stalking horse' for others, Hill presented no evidence to support his conclusion and could only speculate as to the nature of the mortgage-fraud charges and how the charges were investigated within the DA's office." *Hill*, 2014 WL 7497992 at *10. "He did not present any evidence that he was singled out for prosecution under circumstances that do not normally lead to prosecution." *Id.* In sum, "[h]is allegations about the DA's office's motivations for prosecuting him

25

amount to speculation," and "Hill's speculation is not evidence of vindictive prosecution." *Id.*

Hill still rejects that he was indicted because he committed felony crimes, again asserting it was "due to Blue's bribing and influence of Watkins." PDR at 27. But now, before this Court, Hill spends his time arguing about the amount of evidence necessary to entitle a defendant to a hearing. As to the court of appeals's conclusion that he presented *no* evidence—a conclusion which renders Hill's preferred issue moot—Hill musters only two conclusory paragraphs, neither of which address the court of appeals's reasoning. *See* PDR at 63-64. Instead, Hill simply announces the evidence "overwhelmingly proved..." and "clearly showed... Watkins allowed himself to be corruptly influenced by Blue." PDR at 50, 76.

Amicus Blue urges this Court to reject Hill's entreaty to ignore the law and the facts so that he may avoid responsibility for his crimes. There is absolutely no evidence she influenced Watkins to indict Hill. Accordingly, Hill was not entitled to a hearing on the issue, and the indictments thus should not have been dismissed when Blue and Watkins then invoked their privilege.

## Prayer

26

For the foregoing reasons, Amicus Blue respectfully requests this Court to affirm the court of appeals's judgment vacating the trial judge's order dismissing the indictments in these cases and remanding the cases to the trial court with instructions to reinstate the indictments against Hill.

Respectfully submitted,


/s/ Robert N. Udashen
ROBERT N. UDASHEN, P.C.
Bar Card No. 01274700
rnu@sualaw.com


/s/ Brett Ordiway
BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Attorneys for Amicus Blue*

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Brief of Amicus Curiae Lisa Blue in Support of Appellant was electronically served to Albert G. Hill, III and the State of Texas, by and through each parties' attorneys of record, on September 8, 2015.

/s/ Robert N. Udashen
ROBERT N. UDASHEN, P.C.

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1.  the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(B) because this petition contains 4,840 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2.  the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.

/s/ Robert N. Udashen
ROBERT N. UDASHEN, P.C.